UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

– against –

ILYA KRIKHELI and RACHEL KRIKHELI,

Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-CR-528 (SLT)

**TOWNES, United States District Judge:**

In a Second Superceding Indictment filed in February 2009, defendants Ilya and Rachel Krikheli ("the Krikhelis") and two co-defendants – Amit Srivastava and Muhammad Bajwa – were charged with violating 42 U.S.C. § 1320a-7b(b)(1)(B) and § 1320a-7b(b)(2)(A), and with conspiring to violate both of these laws. On September 11, 2009, after Bajwa entered a guilty plea and after Srivastava moved to dismiss the charges relating to § 1320a-7b(b)(1)(B) on constitutional grounds, the Krikhelis – who are jointly represented by a single attorney – moved (1) to sever their trial from that of co-defendant Srivastava; (2) to dismiss the charges against them on the constitutional grounds set forth in defendant Srivastava's motion and on the ground that they are not alleged to have made payments to a "decision-maker;" (3) to dismiss the charges alleging violation of § 1320a-7b(b)(2)(A) and conspiracy to violate the same as multiplicitous of charges alleging violation of § 1320a-7b(b)(1)(B) and conspiracy to violate the same; and (4) for an order granting the Krikhelis certain discovery. For the reasons explained below, the Krikhelis' motion to sever is moot, the discovery motion has been resolved to the Krikhelis' satisfaction and the remaining two motions are denied.

## *BACKGROUND*

The various charging instruments which have been filed against the Krikhelis in this case detail a garden-variety kickback scheme in which the Krikhelis personally, or through

intermediaries, arranged for patients to be referred to a radiological testing facility operated by John Doe #1 ("Doe") in exchange for payments to the referring doctors and the Krikhelis. According to the charging instruments, the Krikhelis themselves initially arranged for doctors of their acquaintance to send patients to Doe's facility in exchange for kickbacks or bribes ranging from $70 to $130, depending on the type of radiological testing involved. Thereafter, the Krikhelis introduced Doe to intermediaries – specifically, Bajwa and Srivastava – who provided the same service as the Krikhelis. Under this arrangement, the Krikhelis received a commission for each referral arranged by the intermediaries.

Srivastava was arrested in mid-July 2008, about one month before the Krikhelis themselves were arrested. These three defendants, along with Bajwa, were subsequently charged in a single indictment, which was subsequently amended to contain three counts. One of these counts – Count Two in the Second Superceding Indictment – alleges that the defendants violated 42 U.S.C. § 1320a-7b(b)(1)(B) by soliciting and receiving kickbacks and bribes "in return for arranging for and recommending the ordering of" certain radiological tests which were paid for by federal health care programs. Another count – Count Three in the Second Superceding Indictment – charges the defendants with violating 42 U.S.C. § 1320a-7b(b)(2)(A) by offering and paying kickbacks and bribes to induce physicians to refer patients to Doe for these diagnostic tests. In addition to these substantive counts, the indictment charges the defendants in Count One with conspiring to violate both § 1320a-7b(b)(1)(B) and § 1320a-7b(b)(2)(A).

In early September, Srivastava moved to dismiss the count alleging violation of § 1320a-7b(b)(1)(B) and to strike that portion of the conspiracy count alleging conspiracy to violate that provision, arguing that this subsection is unconstitutionally vague and overbroad. Shortly thereafter, the Krikhelis moved (1) to sever their trial from Srivastava's; (2) to dismiss the

charges both on the constitutional grounds set forth in Srivastava's motion and on the ground that they are not alleged to have made payments to a "decision-maker;" (3) to dismiss the charges alleging violation of § 1320a-7b(b)(2)(A) and conspiracy to violate the same as multiplicitous of charges alleging violation of § 1320a-7b(b)(1)(B) and conspiracy to violate the same and (4) for an order granting them certain discovery.

Srivastava pled guilty on November 19, 2009. Accordingly, the Krikhelis' severance motion is now moot. The Krikhelis' remaining arguments are addressed below.

## *DISCUSSION*

### *The Motion to Dismiss*

As a preliminary matter, this Court notes that, although the Krikhelis purportedly seek to join in Srivastava's motion to dismiss, they appear to mischaracterize Srivastava's motion. The pertinent portions of the Krikhelis' second argument read as follows:

> The Krikhelis join Srivastava's motion to dismiss any counts of the indictment, and conspiratorial objectives, which allege as unlawful payments – not to a doctor or other party with the ability to refer patients – but rather to induce a person to recommend to another person who is a decision maker that the decision maker, in turn, refer patients. *See* 42 U.S.C. § 1320a-7b(b)(2)(A) (2003).
>
> In addition to the argument advanced by Srivastava, that the statute is unconstitutional on its face, the Court should not, as a matter of statutory construction, construe the statute to make unlawful payments which are not to a decision maker.

Krikhelis' Memorandum in Support of Pre-trial Motions ("Krikhelis' Memo") at 6. This argument implies that Srivastava's argument challenged the constitutionality of § 1320a-7b(b)(2)(A). However, Srivastava's motion was expressly limited to challenging the constitutionality of § 1320a-7b(b)(1)(B). Specifically, Srivastava argued that § 1320a-

3

7b(b)(1)(B) "facially, and as applied to the conduct Srivastava is alleged to have committed, is unconstitutionally overbroad and vague in violation of his first and fifth amendment rights, in criminalizing first amendment-protected paid advertising of lawful services." Memorandum of Law in Support of Srivastavas's Motion to Dismiss ("Srivastava's Memo") at 2.

While it may be true that the Supreme Court has "traditionally viewed vagueness and overbredth as logically related and similar doctrines," *Kolender v. Lawson*, 461 U.S. 352, 358 n. 8 (1983), Srivastava's motion papers appear to be raising two separate arguments. First, Srivastava is advancing a facial and as-applied challenge to § 1320a-7b(b)(1)(B) on the ground that it is impermissibly vague. Second, Srivastava is arguing that this subsection is "overbroad" because it places a substantial restriction on the exercise of First Amendment-protected commercial speech. Since vagueness and overbredth are distinct doctrines, this Court will analyze these two arguments separately.

### *Vagueness*

It long been established that "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966). In addition, "[a] penal law is void for vagueness if it ... fails to establish guidelines to prevent 'arbitrary and discriminatory enforcement' of the law." *City of Chicago v. Morales*, 527 U.S. 41, 64 (1999) (O'Connor concurring) (quoting *Kolender*, 461 U.S. at 357).

In making a "facial" challenge to the statute, a defendant is arguing that the law "is invalid *in toto* – and therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474 (1974). To succeed on such a challenge, a defendant must establish that "the enactment

4

is impermissibly vague in all its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). "[O]rdinarily, 'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *United States v. Williams*, ___U.S.___, 128 S.Ct. 1830, 1845 (2008) (quoting *Hoffman Estates*, 455 U.S. at 495); *see Parker v. Levy*, 417 U.S. 733, 756 (1974). Since "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," *Parker*, 417 U.S. at 756, "[a] court should ... examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates*, 455 U.S. at 495.

Srivastava's arguments were based largely on hypotheticals. For example, Srivastava implied that he could be found to have violated § 1320a-7b(b)(1)(B) if the jury found that Doe paid him for a testimonial that Doe's "facility was convenient or comfortable to the patients, or prompt in reporting test results," or for advertising the clinic as a paid spokesman. Srivastava's Memo at 4. However, there was nothing to suggest that Srivastava was merely advertising Doe's facility. To the contrary, the Government alleged that Srivastava engaged in conduct clearly proscribed by § 1320a-7b(b)(1)(B) – namely, taking kickbacks in return for "arranging for and recommending" that doctors order radiological services for Medicare-eligible patients.

By the same token, there is nothing to suggest that the Krikhelis were engaged in activity that is not clearly proscribed. The Second Superceding Indictment specifically alleges that the Krikhelis solicited and received kickbacks from Doe in exchange for arranging for doctors to refer patients to Doe's radiological imaging facility. Since these allegations describe conduct which falls squarely within that proscribed by § 1320a-7b(b)(1)(B), the Krikhelis cannot advance a facial vagueness challenge, even if the statute may be unclear with respect to other,

hypothetical defendants. *See Williams*, 128 S.Ct. at 1845; *Hoffman Estates*, 455 U.S. at 495; *Parker*, 417 U.S. at 756. The Krikhelis have also failed to allege any basis for arguing that the law is unconstitutionally vague as applied to them.

### *Overbredth*

The overbredth doctrine, unlike the vagueness argument, can be raised even by "a defendant whose conduct clearly falls within the law and may be constitutionally prohibited." *Morales*, 527 U.S. at 72 (Breyer, concurring). Under this doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 128 S.Ct. at 1838. The Supreme Court has recognized "that unconstitutional restriction of expression may deter protected speech by parties not before the court and thereby escape judicial review." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 n. 8 (1980). Accordingly, the Supreme Court permits a defendant whose conduct falls squarely within the law to seek to have the law declared unconstitutional to protect the rights of others whose protected speech might otherwise be chilled. *See Morales*, 527 U.S. at 72 (Breyer, concurring).

The overbredth doctrine does not apply, however, in cases involving commercial speech. *Hoffman Estates*, 455 U.S. at 497 (citing *Central Hudson*, 447 U.S. at 566 n. 8). As the Supreme Court noted in *Central Hudson*, "commercial speech, the offspring of economic self-interest, is a hardy breed of expression that is not 'particularly susceptible to being crushed by overbroad regulation.'" *Central Hudson*, 447 U.S. at 564, n. 6 (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 381 (1977)). Accordingly, restraint on free speech – the evil which the overbredth doctrine was designed to combat – is "less likely where the expression is linked to 'commercial well-being' and therefore ... not as easily deterred." *Id.*, 447 U.S. at 566, n. 8.

As Srivastava's counsel conceded at oral argument, the speech which § 1320a-7b(b)(1)(B) restricts, if any, is commercial speech. Accordingly, the defendants cannot use the overbredth doctrine to argue that this section may chill the First Amendment rights of legitimate advertisers, spokespersons, and others to engage in legitimate commercial speech.[1]

*The "Decision-maker" Argument*

The Krikhelis also advance a basis for dismissing the claims brought under 42 U.S.C. § 1320a-7b(b)(2)(A). Relying on two cases from other circuits – *United States v. Miles*, 360 F.3d 472 (5th Cir. 2004), and *United States v. Polin*, 194 F.3d 863 (7th Cir. 1999) – the Krikhelis argue that § 1320a-7b(b)(2)(A) can only be violated when payments are made or offered to a decision-maker. The Krikhelis reason that only the doctors were decision-makers under the circumstances of their cases, and that "any parts of the indictment alleging unlawful payments to non-doctors, including without limitation, the Krikhelis and Srivastava, must be dismissed." Krikhelis' Memo at 10.

The first problem with this argument is that neither §1320a-7b(b)(2)(A) nor the cases cited by the Krikhelis support the proposition that the individual being paid must be a decision-maker. Section 1320a-7b(b)(2) provides, in pertinent part:

> [W]hoever knowingly and willfully offers or pays remuneration (including any kickback, bribe or rebate) directly or indirectly ... to any person to induce such person ... (A) to refer an individual to a

---

[1] Although Srivastava's attorney stated at oral argument that Srivastava himself engaged in constitutionally protected commercial speech, Transcript of Oct. 13, 2009, Oral Arg. at 3, Srivastava's motion did not suggest a factual basis for this argument. That motion merely hypothesized that Doe may have paid Srivastava to give his personal recommendations to physicians. In fact, Srivastava tacitly admitted in a February 26, 2008, conversation with Doe that he was approaching doctors with a *quid pro quo* arrangement – money for referrals – that he knew to be unlawful. Speech proposing an illegal transaction is not protected as commercial speech. *See Hoffman Estates*, 455 U.S. at 496. Similarly, there is nothing to suggest that the Krikhelis were themselves engaged in legitimate commercial speech.

7

> person for the furnishing or arranging for the furnishing of any
> item or service for which payment may be made ... under a Federal
> health care program ... shall be guilty of a felony ....

The language of the statute does not state or imply that a defendant must pay a "decision-maker," and this Court perceives no basis for reading that requirement into the statute. Indeed, the use of the term "indirectly" implies that a defendant can violate §1320a-7b(b)(2)(A) if he pays a non-decision-maker to offer kickbacks to a decision-maker in exchange for referrals.

The two cases cited by the Krikhelis also do not support the proposition that courts should create such a "decision-maker" requirement. Both *Miles* and *Polin* were appeals from the denial of Rule 29 motions in which the defendants argued that the evidence adduced at their trials was insufficient to convict them of violating §1320a-7b(b)(2)(A). In *Miles*, the defendant and her co-defendant were principals of APRO, a home health care provider. APRO hired Premier Public Relations ("Premier") to advertise their services by delivering APRO's literature and business cards to local medical offices. Although Premier also "occasionally distributed plates of cookies to doctor's offices" and one of the principals of Premier was sometimes contacted by doctors who wanted to refer a patient to APRO, 360 F.3d at 479, there was no suggestion that Premier was paying the doctors anything for the referrals. APRO, however, was paying Premier $300 for every referral.

In finding this evidence insufficient to convict the principals of APRO, the Fifth Circuit noted that "[t]he only issue in dispute [was] whether Premier's activities constituted referrals within the meaning of the statute." 360 F.3d at 480. The appellants argued that Premier "never actually referred anyone to APRO, but simply engaged in advertising activities." *Id.* The Fifth Circuit agreed, noting that Premier played no role in selecting home health care providers and that the payments, which were made to Premier only after a doctor made a referral, were "not

8

made to the relevant decisionmaker as an inducement or kickback for sending patients to APRO." *Id.*

The *Miles* Court distinguished *Polin*, in which the defendant was the director of the Center for Vascular Studies ("CVS"), a medical facility providing cardiac pacemaker monitoring services. Polin's administrative assistant and co-defendant, Nurse Phillips, offered one Haberkorn, a pacemaker sales representative, $50 cash for each patient he referred to CVS. Haberkorn, whose job included making sure that the patients receiving his company's pacemakers were properly monitored, testified at trial that he was "often required ... to refer patients to outside services such as CVS for follow-up." 194 F.3d at 865. Polin and Phillips conceded that they could have been guilty under § 1320a-7b(b)(2)(B) for paying Haberkorn to "recommend" CVS, but argued that they could not be convicted under § 1320a-7b(b)(2)(A) because only doctors, not Haberkorn, had the power to refer patients.

The Seventh Circuit rejected this argument. Although the Court refused to find that § 1320a-7b(b)(2)(A) and § 1320a-7b(b)(2)(B) addressed "different and non-overlapping" types of conduct, *id.* at 866, the Court's decision was principally based on the fact that Haberkorn's "recommendations" were never rejected. Accordingly, Haberkorn was effectively making referrals.

Even if these cases could be read as implying that the person who is paid to refer patients must be a "decision-maker," these cases do not help the Krikhelis. As noted above, there is nothing to suggest that any of the defendants were providing advertising or public relations services of the sort provided by Premier Public Relations in *Miles*. In this case, the Government alleges that payments were made to doctors to induce them to refer patients to Doc. The fact that

9

the Kirkhelis may have acted through intermediaries is of no moment, since § 1320a-7b(b)(2)(A) prohibits indirect, as well as direct, payments.

For these reasons, the Kirkhelis' motion to dismiss is denied. The Krikhelis may renew their vagueness and *Miles*-based arguments in post-trial motions if the proof at trial does not substantially conform to the allegations contained in the Second Superceding Indictment.

*Multiplicity*

The Kirkhelis next argue that the Second Superceding Indictment is multiplicitous because Count Two and Count Three charge the same offense. "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999) (citing *United States v. Holmes*, 44 F.3d 1150, 1153-54 (2d Cir. 1995)). Multiplicitous indictments violate the Double Jeopardy Clause of the Fifth Amendment because such an indictment effectively places a person in peril twice for the same crime. *Id.*

Since the prohibition against multiplicitous indictments is rooted in double jeopardy concerns, the test used to assess whether two offenses charged in the indictment are really one offense is the "same elements" or "*Blockberger*" test used in post-trial double jeopardy analysis. *Id.* at 146; *see Blockberger v. United States*, 284 U.S. 299 (1932). This test "examines whether each charged offense contains an element not contained in the other charged offense." *Id.* "If there is an element in each offense that is not contained in the other, they are not the same offense ...." *Id.*

In this case, it is readily apparent that the offenses charged in Counts Two and Three of the Second Superceding Indictment have different elements. In order to prove the Krikhelis guilty of Count Two, the Government will have to prove that these defendants solicited and

10

received kickbacks. To prove the Krikhelis guilty of Count Three, the Government will have to prove that these defendants offered and paid kickbacks. Accordingly, the Krikhelis' third argument is transparently without merit.

*Discovery*

Finally, the Krikhelis' motion to compel discovery appears to have been resolved. At oral argument, the Krikhelis' attorney largely concurred with the Government's representation that there was no discovery dispute requiring judicial intervention, saying:

> I believe that's correct. I would ask for the reasons stated in my papers for the Court to urge the government to turn over these materials earlier rather than later so we could have an orderly trial process and adequate time to review these materials.

Transcript of Oct. 13, 2009, Oral Arg. at 53.

This Court has already provided the relief requested by the Krikhelis by urging the Government, at oral argument, to turn over the discovery materials as soon as possible. *Id.* To the extent further discovery disputes arise in the future, the Krikhelis may renew this portion of the motion at that time.

## CONCLUSION

For the reasons set forth above, the Krikhelis' motion to sever is moot, the discovery motion has been resolved to the Krikhelis' satisfaction, and the remaining two motions are denied.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated: November 24, 2009
Brooklyn, New York

11